**UNITED STATES of America**

v.

**John RICCIO, Appellant.**

**No. 08–3776.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) June 11, 2009.

Filed: Aug. 13, 2009.

John Gallagher, Office of United States Attorney, Philadelphia, PA, for United States of America.

Ronald H. Levine, Esq., Post & Schell, Philadelphia, PA, for Appellant.

Before: McKEE, HARDIMAN and VAN ANTWERPEN, Circuit Judges.

OPINION OF THE COURT

HARDIMAN, Circuit Judge.

John Riccio appeals his judgment of conviction for possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) and aiding and abetting in violation of 18 U.S.C. § 2. We will affirm.

■ Riccio argues that the Government failed to introduce sufficient evidence that he knowingly possessed a firearm in furtherance of a drug-trafficking crime. "We apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence" and "we must view the evidence in the light most favorable to the government. . . ." *United States v. Dent,* 149 F.3d 180, 187 (3d Cir.1998).

Riccio and his half-brother, James Miller, were involved in a drug trafficking conspiracy that was thwarted through undercover police work. With the assistance of a confidential informant, the undercover officer made four visits between October 13, 2006 and November 15, 2006 to 102 Bruce Lane in Wind Gap, Pennsylvania, a single-story, nine-hundred-square-foot abode where Riccio and Miller lived. After the officer purchased marijuana and methamphetamine from Riccio and Miller during October and November of 2006, search and arrest warrants were issued on November 16, 2006 and executed on November 20, 2006.

During the search, a metal ammunition can containing a large amount of methamphetamine and marijuana was found under the bed in Miller's bedroom. A second

ammunition can containing $69,500 in cash also was recovered. In addition, several bags of marijuana were found under the bed, along with drug paraphernalia. In total, more than one kilogram of methamphetamine and more than two kilograms of marijuana were recovered during the search.

In addition to the drugs, two firearms were recovered from Miller's bedroom: a loaded .22 caliber rifle propped up against the wall and an unloaded .22 caliber handgun in a case in Miller's dresser drawer. Finally, approximately 1,400 rounds of ammunition were found throughout the abode and a detached shed on the property. Some of the ammunition was found in Riccio's bedroom.

The gravamen of Riccio's appeal is that the evidence was insufficient for the jury to conclude that Riccio constructively possessed the firearms because they were found in his half-brother's bedroom, one of the guns was less than fully functional, and the guns were neither discussed nor displayed during the drug transactions involving the undercover officer. This argument is unpersuasive for several reasons. First, the dwelling was very small, containing only four rooms and a bathroom within nine hundred square feet. In addition, ammunition was found throughout the house, including Riccio's bedroom. The home, about which a pit bull roamed freely, was equipped with security cameras and an alarm system that alerted Riccio and Miller when anyone drove up the gravel road to the house. Large quantities of drugs and cash were recovered at the home as well. The firearms, one of which was loaded, were located just feet away from where Riccio sold drugs to the officer on more than one occasion. Viewing the evidence in the light most favorable to the Government, a jury could reasonably conclude that the firearms—like the surveillance equipment, drug para-

phernalia, and ammunition—were possessed by both co-conspirators in furtherance of their drug business. *See United States v. Sparrow,* 371 F.3d 851, 853–54 (3d Cir.2004).

Riccio attempts to distinguish our decision in *Sparrow* by arguing that the Government failed to satisfy the "in furtherance" and "dominion and control" requirements of 18 U.S.C. § 924(c). Because the firearms were in Miller's bedroom, Riccio argues, the Government failed to prove that Riccio exercised dominion and control over them. We reject this argument because, although a reasonable juror may have concluded that Riccio did not exercise dominion and control over the firearms, this was not the only rational inference that could be drawn from the facts presented at trial. In light of the aforementioned facts, the jury was free to conclude that Riccio exercised dominion and control over the firearms.

■ As for the "in furtherance" requirement, Riccio applies the eight "non-exclusive" factors we outlined in *Sparrow* and argues that those factors compel a finding of insufficient evidence. We disagree. Although there was no evidence that the firearms were stolen or that they were possessed illegally, the guns were found in a home that was used essentially to wholesale methamphetamine and marijuana (factor one), the rifle was accessible and the handgun was not far away (factor two), the rifle could be deployed quickly by Riccio or Miller if a drug deal were going bad (factor three), the rifle was loaded (factor six), the firearms were found in the midst of active drug trafficking (factor seven), and the firearms were very close to the drugs, the cash, and the ammunition (factor eight). Although Riccio correctly notes that Miller acknowledged that he bought the loaded .22 caliber rifle for his grandson to

shoot squirrels and that it was never used to assist or intimidate during drug transactions, the jury was not required to find that testimony credible. For the foregoing reasons, there was ample evidence from which a reasonable juror could conclude that the "in furtherance" requirement was satisfied.

Finally, Riccio relies on two closed-container cases where there was no evidence to indicate that the defendants were aware of the existence of the firearms. *See, e.g. United States v. Cunningham*, 517 F.3d 175, 179 (3d Cir.2008), and *United States v. Garth*, 188 F.3d 99, 114 (3d Cir.1999). Here, there is ample evidence that Riccio knew about the firearms because he testified as to the handgun, the rifle was in plain view, and the ammunition was in his room and strewn about the house.

Riccio's reliance on *United States v. Jenkins*, 90 F.3d 814 (3d Cir.1996), and *United States v. Brown*, 3 F.3d 673, 680 (3d Cir.1993), is equally misplaced. There, we reversed convictions of defendants who had been present or had some knowledge of the drugs but who had no control or dominion over them. Such is plainly not the case here because Riccio was involved in storing, packaging, and distributing drugs from a small home where he and his half-brother resided and each had full access thereto.

For the foregoing reasons, we will affirm Riccio's judgment of conviction.